# 440   MATTER OF FLETCHER.

---

In the Matter of the Application of STANLEY FLETCHER, Respondent, for the Appointment of a Third Arbiter.

GROSVENOR NICHOLAS, Appellant.

Arbitration — contract — former adjudication — agreement for appraisal to determine fair market value of stock — when may not be enforced under provisions of Arbitration Law — remedy of party to agreement where parties selected under provisions of contract fail to act — judgment in prior action based upon determination that valuation had not failed through fault of defendant therein no bar to new action showing waiver of rights since that time or lapse of valuation as provided in contract.

1. The provisions of the Arbitration Law (Cons. Laws, ch. 72) are properly applicable to any contract where the parties have agreed to substitute for the courts an informal tribunal of their choice in the settlement of a controversy, but they are not applicable where the parties have agreed only to permit third parties to decide a particular matter instead of attempting to reach an agreement themselves.

2. A contract whereby certain stock, to be deposited in escrow might, in certain contingencies be purchased by one of the parties to the agreement at its fair market value to be determined by a.. appraisal to be made by arbiters to be appointed as provided in the contract, does not come within the letter or the spirit of the Arbitration Law. It is not an agreement to settle a controversy between the parties but is one to avoid a possible controversy by leaving the settlement of a question to third parties who are not expected to settle the matter in a *quasi*-judicial manner.

3. Failure to act, by the persons selected under the provision of the contract to make the appraisal, does not leave the parties thereto helpless. In such an event, in an action brought by either for the enforcement of his rights, the court upon allegation and proof of such failure to make a valuation as provided in the contract, would have the power to determine itself the fair value of the stock as an incident to the enforcement of the rights of the parties, treating the method as a matter of form rather than substance.

4. A judgment, in a prior action brought by respondent against appellant, based upon the ground that appellant had intentionally caused the failure to appoint a third arbiter, wherein the court found that neither appellant nor the arbiter appointed by him was at fault and dismissed the complaint, established only that up to that time the valuation had not failed through the fault of appellant and constitutes no bar to an action to be brought now against appellant and those who hold the stock in escrow for the delivery of the stock to respondent upon allegations showing either that since that time appellant has waived his rights to purchase the stock or that the valuation as provided in the contract has now definitely lapsed; and the court in such action can without prior determination of the arbiters give judgment fixing the rights of the parties in accordance with the facts proven.

*Matter of Fletcher*, 206 App. Div. 778, reversed.

(Submitted January 16, 1924; decided February 26, 1924.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered July 5, 1923, which unanimously affirmed an order of Special Term appointing a third arbiter under the provisions of a written contract.

*Albert Stickney* for appellant. The Arbitration Law is inapplicable to this proceeding. The provisions of the

Arbitration Law, according to its terms, are only applicable to a case where the contract contains a provision either to settle by arbitration " a controversy thereafter arising between the parties," or a submission " hereafter entered into of an existing controversy to arbitration." (L. 1921, ch. 14.) The " arbiters " referred to in the contract are nothing more nor less than appraisers. The Arbitration Law is not applicable to appraisals. (*Wurster* v. *Arenfield,* 175 N. Y. 256; *Brink* v. *N. A. Fire Ins. Co.* 5 Robt. 104; *Freeman* v. *Ralph Realty Corp.,* 198 App. Div. 788; *Strome* v. *London Assurance Corp.,* 20 App. Div. 571; *Williams* v. *Hamilton Fire Ins. Co.,* 118 Misc. Rep. 799.)

*John L. Wells* for respondent. The arbitration agreement of February 3, 1917, was within the provisions of section 2 of the Arbitration Law. (*Matter of Berkovitz* v. *Arbib & Houlberg,* 230 N. Y. 261; *Fletcher* v. *Nicholas,* 194 App. Div. 897; *Wyckoff* v. *Woarms,* 118 App. Div. 699; *New York Lumber Co.* v. *Schneider,* 119 N. Y. 475; *National Contracting Company* v. *Hudson R. W. P. Co.,* 170 N. Y. 439; *Livingston* v. *Sage,* 95 N. Y. 289; *Brink* v. *New Amsterdam Fire Ins. Co.,* 28 N. Y. Super. Ct. 104; *Howard* v. *Sexton,* 4 N. Y. 157; *Cutter* v. *Putter,* 16 J. & S. 470; 98 N. Y. 628; *Hinkle* v. *Zimmerman,* 184 N. Y. 114.)

Lehman, J. On or about February 3d, 1917, Stanley Fletcher and Grosvenor Nicholas entered into a written contract which contained a provision that Grosvenor Nicholas should deposit in escrow with three named persons stock of the par value of $40,000 of the corporation of Grosvenor Nicholas & Co., Inc., to be held for Mr. Fletcher upon the condition that in certain contingencies " Mr. Nicholas shall have the right to purchase the said $40,000 aggregate par value of stock of Grosvenor Nicholas & Company, Inc., held for Mr. Fletcher as aforesaid at the fair value thereof, to be determined as of the date of November 1st, 1917, and may take and pay therefor within thirty days after the said fair value thereof

shall have been determined as hereinafter provided in paragraph Fifth hereof. *Fifth.* The said fair value of the said stock on November 1st, 1917 at which Mr. Nicholas may purchase the same shall be determined by an appraisal thereof made by three arbiters, one to be appointed by Mr. Fletcher or his representative, another to be appointed by Mr. Nicholas or his representative and a third to be appointed by the other two." It was further provided in the contract that " if Mr. Nicholas shall not so purchase the same within the said thirty (30) days then the certificates for the said stock shall be immediately thereafter delivered to Mr. Fletcher to be held or disposed of by him as he may see fit." On November 1, 1917, the contingency had arisen upon which it was agreed that Mr. Nicholas should have the right to purchase the stock but no third arbiter has ever been selected and no appraisal has been had as provided in the contract between the parties. Apparently Mr. Fletcher or his representative has made some attempts, at least during the last two or three years, to secure the selection of a third arbiter by the other arbiters and when these attempts failed he made application to the court for the appointment of an arbiter under section 4 of the Arbitration Law, chapter 275 of the Laws of 1920. This appeal brings up for review the order granting that application.

Section 4 of the Arbitration Law (Cons. Laws, ch. 72) authorizes the appointment of an arbitrator by the court where for any reason " there shall be a lapse in the naming of an arbitrator or abitrators or umpire, or in filling a vacancy " in connection with an arbitration provided for " in the contract for arbitration or in the submission, described in section two." Section 2 of the Arbitration Law provides that " a provision in a written contract to settle by arbitration a controversy thereafter arising between the parties to the contract, or a submission hereafter entered into of an existing controversy to arbitration pursuant to title eight of chapter seventeen of the

Code of Civil Procedure, or article eighty-three of the Civil Practice Act, shall be valid, enforcible and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." No contention is made that except as provided in the Arbitration Law the courts have any power to appoint an arbitrator where the parties have provided for the appointment of arbitrators directly or indirectly by themselves, and the Arbitration Law applies only to contracts or submissions "described in section two." The agreement of the parties in the present case constitutes no actual "submission to arbitration" pursuant to the provisions of the Code of Civil Procedure or the Civil Practice Act even if it could conceivably be regarded as a submission to arbitration at common law. (See *Wurster* v. *Armfield*, 175 N. Y. 256.) Moreover though the Arbitration Law applies to all written *contracts to settle* by arbitration a controversy thereafter arising, including contracts made before the passage of the Arbitration Law (*Matter of Berkovitz* v. *Arbib & Houlberg*, 230 N. Y. 261), yet by its express terms it applies only to such *submissions* as are "hereafter entered into." The exercise of the power of the court to appoint an "arbitrator" in this special proceeding must, therefore, rest upon a finding that the provision of the contract providing for the determination of the value of corporate stock by three "arbiters" constitutes a provision "to settle by arbitration a controversy thereafter arising" within the meaning of the statute.

It is to be noted at the outset that the contract under consideration does not provide for a determination of damages for which one of the parties may be liable in law; it does not provide for a determination of any question after disagreement of the parties upon that question; it does not attempt to substitute a tribunal created by contract for a court of justice in a dispute which would otherwise be justiciable by the courts. It merely substituted the determination of a particular matter affecting

1924.] Opinion, per Lehman, J. [237 N. Y. 440]

contractual rights, by persons selected by the parties, in place of the determination of that question by the parties themselves in some other manner. If such a provision brings the contract within the application of the Arbitration Law then it would seem that every contract which provides for an appraisal, a valuation or the determination of any fact affecting contractual rights, by one or more persons, either named or thereafter to be selected likewise comes within the provisions of that law.

Even prior to the Arbitration Law the courts have held that a provision in a contract that before a right of action arises certain facts shall be determined or amounts and values ascertained is valid and not against public policy (*President, etc., D. & H. Canal Co.* v. *Pennsylvania Coal Co.*, 50 N. Y. 250), and it cannot be doubted that the provision of the contract under consideration comes within this rule. The primary purpose of the Arbitration Law was to make valid and enforcible provisions for arbitration which had previously been regarded as contrary to public policy but it also provides a practical method for the enforcement of such provisions and both the letter and spirit of the statute require the courts to hold that this method was intended to apply to all contracts " to settle by arbitration a controversy thereafter arising; " both those which were regarded as valid before the Arbitration Law as well as those which were regarded as contrary to public policy. On the other hand, the language of the statute should not be stretched to cover contracts which do not come within its plain intent where the application of the method of procedure provided in the statute is not practicable.

" In order to constitute a submission to arbitration there must be some difference or dispute, either existing or prospective, between the parties and they must intend that it should be determined in a quasi-judicial manner. Therein lies the distinction between an agreement for a valuation and a submission to arbitration, for in the case

of a valuation there is not as ·a rule any difference or dispute between the parties and they intend that the valuer shall without taking evidence or hearing argument, make his valuation according to his own skill, knowledge and experience." (Halsbury Laws of England, vol. I, p. 440.) See, also, *Matter of Carus-Wilson & Greene* (18 Q. B. D. 7), where the court held that the valuation of property by appraisers, to be selected, as in the present case, to determine the price to be paid upon a sale constitutes no arbitration and the distinction is drawn between the appointment of a person " to ascertain some matter for the purpose of preventing differences from arising " and the appointment of a person to settle or determine differences after they have arisen. In the present case no difference or controversy can be said to have arisen between the parties as to the fair value of the stock or the amount to be paid by Mr. Nicholas if he decides to buy it — perhaps because the parties in order to avoid the possibility of such differences arising have left the determination of the question in the first instance to presumably disinterested and expert persons. The Arbitration Law is by its terms made applicable only to contracts " to settle by arbitration a controversy " and we cannot hold that the contract under consideration comes within the terms of the statute unless we give the words " to settle a controversy " a construction so extraordinarily broad as to cover a provision intended to permit third persons to determine any question which affects the contractual rights of the parties.

Even should we assume that such a construction would in a proper case be permissible in order to effectuate the purpose of the legislature, if such purpose clearly appeared from a reading of the entire statute in the light of the conditions which led to its enactment, it seems clear that no such legislative purpose appears in this case. Arbitrations have always been regarded as proceedings by which controversies otherwise cognizable by the

courts are submitted to the decision of persons selected
by the parties to the dispute.    The provisions of the Code
of Civil Procedure now embodied in the Civil Practice
Act permitted submissions to arbitration even before the
Arbitration Law was passed and regulated the procedure
upon such submission.    These provisions require hearing
upon notice and the taking of an oath by the arbitrators.
They confer upon the arbitrators all the powers which
are " conferred upon a board or a member of a board
authorized by law to hear testimony " including the power
to require the attendance of witnesses.    They give the
arbitrators the right in their awards to require the pay-
ment by either party of fees and expenses.    They fix the
form of an award.    They provide for motions to confirm,
vacate, modify or correct an award and they permit the
entry of a judgment after the confirmation of an award.
That judgment " may be enforced as if it had been
rendered in an action in the court in which it is entered "
and " an appeal may be taken from an order vacating
an award, or from a judgment entered upon an award, as
from an order or judgment in an action."    These pro-
visions are appropriate to proceedings where parties sub-
stitute judges of their own choice for judges chosen by
the state in the determination of disputes otherwise
cognizable by the courts alone; they can have no applica-
tion to proceedings through which disinterested persons
are authorized to settle questions which would otherwise
be left to the determination of the parties to the
contract. If we hold that the contract under consider-
ation comes within the purview of the Arbitration
Law, then by force of section 8, the provisions of the Code
of Civil Procedure and of the Practice Act above referred
to " so far as practicable and consistent with this chapter,
shall apply to an arbitration agreement under this
chapter, and for such purpose the arbitration agreement
shall be deemed a submission to arbitration."    Since the
legislature has expressly confined the application of the

**448**        MATTER OF FLETCHER.

Arbitration Law to contracts " to settle by arbitration a controversy thereafter arising between the parties " and has conferred upon the arbitrators powers appropriate only to the decision of matters otherwise cognizable by the courts, it seems to us that it was the plain intent of the legislature not to include mere valuations, appraisals or other determination of matters which except for the provisions of the contract would be settled not by the courts after a judicial inquiry but by the parties themselves without such inquiry. The present contract is not one to settle a controversy between the parties but is one to avoid a possible controversy by leaving the settlement of a question to third parties; the third parties are not expected to settle the matter in a quasi-judicial manner. and it seems to us that it, therefore, does not come within the letter or the spirit of the statute.

It is urged that since the courts have decided in many cases that they will not enforce by a decree of specific performance provisions in a contract for the determination by third parties of questions arising thereunder, the parties are left helpless or at best must resort to a cumbersome remedy by suit. Assuming but by no means deciding both that the rule against specific performance of such provisions has survived the enactment of the Arbitration Law and that in spite of the language of the statute, considerations of convenience could be given any weight, such considerations seem to have little foundation in fact. The courts have always enforced such contracts where as in this case the provision for an appraisal could be regarded as incidental and subsidiary to the substantive part of the agreement and " treating the method as a matter of form rather than substance, the courts have by a reference or otherwise determined the value for the purpose of enforcing the contract according to its real spirit and purpose." (*Mutual Life Ins. Co. of N. Y.* v. *Stephens*, 214 N. Y. 488, at p. 495, and cases there cited.) The effect of failure to act

by persons selected, under the provisions of a contract, to determine particular matters as a prerequisite to the assertion of rights under the contract and the effect of misconduct which vitiates a determination have been frequently considered by the courts, especially in connection with insurance or construction contracts. In such contingency a party to the contract may enforce his rights thereunder by action as if there were no requirement for a prior determination of any fact which the court could itself determine in the action. We cannot hold that either party may in such a case compel an appraisal, valuation or other determination of fact preliminary to the assertion of a right, as an "arbitration" within the purview of the Arbitration Law, without at the same time bringing confusion into the law and inconvenience to the parties to the contract. No party to such a contract would know till the courts have passed upon the question whether in any given case the application of any particular section of the Civil Practice Act would be practicable. At his peril a party would be obliged to determine for himself whether the so-called arbitrator should be sworn, whether he must hold hearings upon notice and make a formal award. The award would be ineffective unless confirmed; if confirmed no appeal could be taken unless a judgment is entered, yet sometimes as in the present case it would be difficult to decide what judgment could be appropriately entered upon the determination of the particular question settled by the " arbitrator." A party would be required to make a motion vacating the award in case of misconduct of the " arbitrator," and then to enter upon a new " arbitration " instead of being permitted to disregard a determination improperly made and to assert his rights without any further prior determination. The present case in my opinion aptly illustrates the clumsiness of the proposed remedy when applied to contracts of this type. The real purpose of

29

**450** . MATTER OF FLETCHER.

the contract was to give Mr. Nicholas the right to purchase the stock at its fair value, the provision for valuation constituted merely the agreed method of arriving at the fair value and was purely incidental and subsidiary to the substantive part of the contract. Such a valuation would serve no purpose except to enable Mr. Nicholas to decide whether to exercise his right to buy the stock and to enable Mr. Fletcher to fix a definite time when that right must be exercised or lost. No so-called award would settle the ultimate rights of the parties, for all the parties have agreed to do is to permit " arbiters " to determine one question of fact upon which the assertion of rights may thereafter be based. If both parties are willing to have such determination made in accordance with the terms of the contract, no resort to the court is necessary. If the determination has not been made because of wrongful acts or refusal to proceed on the part of Mr. Nicholas, it might well be held that he has waived or forfeited any rights under the contract which might be based upon such valuation, and that Mr. Fletcher is entitled to the delivery of the stock free from any rights of Mr. Nicholas thereto; but only the court could pass upon this question. Only if the prior determination has failed for any other reason, such as the wrongful acts, disability, or failure to proceed on the part of either or both arbiters or the umpire, would the right of Mr. Nicholas to purchase still be in existence and any necessity exist for the determination of the value of the stock. In such an event, in an action brought by either for the enforcement of his rights, the court upon allegation and proof of such failure to make a valuation as provided in the contract, would have the power to determine itself the fair value of the stock as an incident to the enforcement of the rights of the parties, " treating the method as a matter of form rather than substance." (*Mutual Life Ins. Co. of N. Y.* v. *Stephens, surpa.*)

It may be urged that before the Arbitration Law went

into effect Mr. Fletcher brought an action for such purpose and that the court refused to determine the fair value of the stock because Mr. Nicholas objected. It is to be noted, however, that this action " was based on the ground that Nicholas had intentionally caused the failure to appoint a third arbiter," and the court found that neither Mr. Nicholas nor the arbiter appointed by him was at fault. The court was compelled to dismiss the complaint because Fletcher failed to prove the cause of action alleged. Of course if Mr. Nicholas and his arbiter were not at fault and he was entitled to a dismissal of the action, he was not under any duty to consent to the court making the valuation. On the other hand, that judgment established only that up to that time the valuation had not failed through the fault of Mr. Nicholas, it can con-stitute no bar to an action, to be brought now against Mr. Nicholas and those who hold the stock in escrow, for the delivery of the stock to plaintiff upon allegations showing either that since that time Mr. Nicholas has waived his rights to purchase the stock or that the valuation as provided in the contract has now definitely lapsed; and the court in such action can without prior determination of the arbiters give judgment fixing the rights of the parties in accordance with the facts proven.

The provisions of the Arbitration Law are properly applicable to any contract where the parties have agreed to substitute for the courts an informal tribunal of their choice in the settlement of a controversy, but they are not applicable where the parties have agreed only to permit third parties to decide a particular matter instead of attempting to reach an agreement themselves.

For these reasons the order should be reversed, with costs in all courts, and the motion denied, with ten dollars costs.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Order reversed, etc.